# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

Nº 12-CV-1191 (JFB) (ARL)

————————————

JOHN C. CARTER; NICOLE HAWKINS-CARTER, AS PARENT AND NATURAL GUARDIAN OF MARQUIS HAWKINS, AN INFANT UNDER THE AGE OF SIXTEEN YEARS, KELLI BRISTER, AN INFANT UNDER THE AGE OF TEN YEARS, KRISTA BRISTER, AN INFANT UNDER THE AGE OF NINE YEARS, KENNETH BRISTER, AN INFANT UNDER THE AGE OF SIX YEARS, AND JOHN C. CARTER AND NICOLE HAWKINS-CARTER, INDIVIDUALLY,

Plaintiffs,

VERSUS

THE COUNTY OF SUFFOLK AND FABIENNE ALEXANDRE,

Defendants.

————————————

**MEMORANDUM AND ORDER**
December 2, 2013

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs John C. Carter ("Carter") and Nicole Hawkins-Carter ("Hawkins-Carter"), both individually and in her capacity as parent and natural guardian of Marquis Hawkins ("Marquis"), Kelli Brister ("Kelli"), Krista Brister ("Krista"), and Kenneth Brister ("Kenneth"), (collectively, "plaintiffs") commenced this action against the County of Suffolk ("the County") and Fabienne Alexandre ("Alexandre"), alleging that the County and Alexandre participated in the wrongful placement of Marquis, Kelli, Krista, and Kenneth in foster care for approximately seven months, in violation of federal and state law.

Specifically, as to the claims against the County, plaintiffs allege a violation of their constitutional rights pursuant to 42 U.S.C. § 1983, as well as the following claims under state law: violation of the New York Constitution, false imprisonment, malicious prosecution, prima facie tort, intentional infliction of emotional distress, reckless gross negligence, libel, and slander.[1]

--------

[1] By letter dated October 15, 2013, counsel for plaintiffs has requested leave to discontinue this action without prejudice against Alexandre. Defendant Alexandre never appeared in this action, and counsel for the County asserts that Alexandre was not properly served. The Court grants that request and dismisses all claims against Alexandre without prejudice.

The County now moves for summary judgment on all of the claims asserted against it, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the County's motion in its entirety with respect to the Section 1983 claim, and declines to exercise supplemental jurisdiction over the state law claims. In particular, plaintiffs simply rely upon a conclusory allegation of an unconstitutional policy or custom, and have put forth no evidence to support a municipal liability claim against the County.

## I. BACKGROUND

### A. Factual Background

The following allegations are taken from the complaint and Carter and Hawkins-Carter's affidavit in opposition to the County's motion for summary judgment. The Court recites these facts in order to provide the background to this action; however, the following facts are not findings of fact by the Court.

Carter and Hawkins-Carter married in April 2009. (Compl. ¶ 23.) Hawkins-Carter is the mother of Marquis, Kelli, Krista, and Kenneth; Carter is the children's stepfather. (*Id.* ¶¶ 23, 28 & Ex. A.)

In early 2010, Child Protective Services ("CPS") investigated Carter and Hawkins-Carter's home on two occasions. (Aff. of Carter & Hawkins-Carter ¶ 3.) Both times CPS determined that no children were "likely to be in immediate or impending danger of serious harm." (*Id.*) Then, in May 2010, Marquis ran away from home twice. (*Id.*) Hawkins-Carter called a representative from the County's Department of Social Services Emergency Services for advice, and the representative told her to bring Marquis for a psychiatric evaluation. (*Id.*) After a doctor evaluated Marquis, CPS opened a new investigation into the well-being of Marquis, Kelli, Krista, and Kenneth. (*Id.*)

Alexandre, a CPS caseworker, visited plaintiffs' home in May 2010. (*Id.*) Carter and Hawkins-Carter assert that Alexandre was unprofessional, abusive, and in a rush to leave. (*Id.*) As a result, Hawkins-Carter called Alexandre's supervisor at CPS to complain about Alexandre's conduct. (*Id.*) The supervisor allegedly told Hawkins-Carter, "[Y]ou know I can have your kids taken from you." (*Id.*)

Several days later, on or about May 27, 2010, Marquis, Kelli, Krista, and Kenneth were removed from the family home and placed in foster care. (Compl. ¶ 24; Aff. of Carter & Hawkins-Carter ¶ 3.) The next day, the County's Department of Social Services filed a petition for neglect in New York Family Court. (Compl. ¶ 25; Aff. of Carter & Hawkins-Carter ¶ 5.)

According to plaintiffs, on December 23, 2010, a Family Court judge dismissed the petition, admonished the County's Department of Social Services and its attorneys for having knowingly filed a false petition, and ordered that the four children be returned to their home. (Compl. ¶ 26; Aff. of Carter & Hawkins-Carter ¶ 6.) The children were released from foster care and returned home shortly thereafter. (Compl. ¶ 24.) Plaintiffs assert that, as a result of the County's wrongful placement of the four children in foster care, they suffered severe emotional distress. (*Id.* ¶ 27; Aff. of Carter & Hawkins-Carter ¶¶ 8, 10.)

Plaintiffs also allege that the wrongful removal of the children stemmed from the County's policy of "interpreting the New York statutes which define child abuse and maltreatment in an unconstitutionally overly broad manner." (Compl. ¶ 31.)

### B. Procedural Background

Plaintiffs filed the complaint in this action on March 12, 2012. The County answered the complaint on April 2, 2012. On May 28, 2013, the County moved for summary judgment. Plaintiffs submitted their opposition on July 11, 2013, and the County submitted its reply on July 31, 2013. The Court held oral argument on September 24, 2013. By letter dated October 15, 2013, counsel for plaintiffs requested that all claims against defendant Alexandre, who had never appeared in this action, be dismissed without prejudice. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (emphasis in original). As the Supreme Court stated in *Anderson*, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.

3

1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## III. Discussion

### A. Plaintiffs' *Monell* Claim

Plaintiffs assert that the County violated their constitutional rights under Section 1983. To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself create substantive rights; it offers "'a method for vindicating federal rights elsewhere conferred . . . .'" *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

The Supreme Court has explained that a municipal entity may be treated as a "person" for purposes of imposing liability under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870–71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). Moreover, a policy, custom, or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may be held liable only where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

"Conclusory allegations of municipal liability will not defeat a motion for summary judgment on a *Monell* claim." *Sheikh v. City of New York, Police Dep't*, No. 03-CV-6326 (NGG), 2008 WL 5146645, at *11 (E.D.N.Y. Dec. 5, 2008); *see Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993). Moreover, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy . . . ." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

In the present case, the County points to the absence of any evidence in the summary judgment record that might establish an unconstitutional municipal policy or custom. Plaintiffs respond by reciting paragraph thirty-one of their complaint, which alleges that the County has a policy of "interpreting

the New York statutes which define child abuse and maltreatment in an unconstitutionally overly broad manner." (Compl. ¶ 31; *see* Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. 7.) However, plaintiffs do not support this claim with any evidence in the summary judgment record. Indeed, at oral argument on this motion, plaintiffs confirmed that they did not take any discovery in this case and were unable to point the Court to any evidence of an unconstitutional policy, practice, or custom. In short, there is simply no evidence in the record to support a *Monell* claim against the County.

Because there is absolutely no evidence of an unconstitutional policy, practice, or custom by the County, the Court concludes that the County is entitled to summary judgment on plaintiffs' Section 1983 claim. Plaintiffs' "vague and conclusory assertion[]" of a municipal custom or policy, without any actual supporting evidence, is insufficient to survive a motion for summary judgment. *Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 25 (E.D.N.Y. 2013); *see, e.g.*, *Sheikh*, 2008 WL 5146645, at *12 (granting summary judgment for defendants on plaintiff's *Monell* claim, where plaintiff failed to provide any evidence of municipal custom or policy); *Jouthe v. City of New York*, No. 05-CV-1374 NGG VVP, 2009 WL 701110, at *8 (E.D.N.Y. Mar. 10, 2009) (same); *Feurtado v. City of New York*, 337 F. Supp. 2d 593, 598–600 (2004) (same).

Accordingly, the Court holds that summary judgment is warranted in the County's favor, and that the Section 1983 claim against the County must be dismissed.

B. New York State Law Claims

Plaintiffs' complaint also asserts causes of action under New York law. The County argues that, upon dismissal of the Section 1983 claim, the Court should decline to exercise supplemental jurisdiction over the state law claims against it. The Court agrees.

Having determined that the federal claims against the County do not survive summary judgment, and given that plaintiffs are no longer pursuing any claims against Alexandre in federal court, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiffs' state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons

put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims against the County given the absence of any federal claims that survive summary judgment, and dismisses such state claims without prejudice.

## IV. CONCLUSION

For the reasons set forth above, the County's motion for summary judgment is granted, and the Section 1983 claim against the County is dismissed with prejudice. Plaintiffs' request for leave to discontinue without prejudice against Alexandre is granted, and the Court dismisses all claims against Alexandre without prejudice. Finally, the Court declines to exercise supplemental jurisdiction over the state law claims against the County, and dismisses the state law claims without prejudice.

SO ORDERED.

_____
Judge Joseph F. Bianco
United States District Judge

Date:   December 2, 2013
        Central Islip, NY

*       *       *

The attorney for the plaintiffs is Joseph C. Stroble, 40 Main Street, P.O. Box 596, Sayville, NY 11782. The attorney for the County of Suffolk is Dennis M. Brown, Suffolk County Attorney, by Arlene S. Zwilling, P.O. Box 6100, 100 Veterans Memorial Highway, Hauppauge, NY 11788.

6